UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN DOE, | ) |
| PLAINTIFF, | ) ) ) |
| vs. | ) Case No.: 20-cv-4065 ) ) |
| CITY OF CHICAGO and FIREFIGHTER WILLIAM REGAN, | ) ) ) |
| DEFENDANTS. | ) ) |

### COMPLAINT AT LAW

NOW COMES the Plaintiff, JOHN DOE, by and through his attorneys, Blake Horwitz, Esq., and Jeffrey C. Grossich, Esq., of The Blake Horwitz Law Firm, Ltd., and pursuant to this Complaint at Law against the above-named Defendants, CITY OF CHICAGO and FIREFIGHTER WILLIAM REGAN, states as follows:

**I.     JURISDICTION AND VENUE**

1. The jurisdiction of this Court is invoked pursuant to the Civil Rights Act, 42 U.S.C. § 1983; the Judicial Code, 28 U.S.C. § 1331 and § 1343(a); the Constitution of the United States; and this Court's supplementary jurisdiction powers.

2. Venue is proper pursuant to 28 U.S.C. § 1391(b), as all or some of the parties reside in this District and the events giving rise to the claims occurred in this District.

**II.     PARTIES**

3. PLAINTIFF JOHN DOE (hereinafter "PLAINTIFF") is a resident of Illinois and a citizen of the United States.

4. PLAINTIFF is Black.

1

5. DEFENDANT FIREFIGHTER WILLIAM REGAN ("DEFENDANT REGAN") was at all times material and relevant hereto employed by and acting on behalf of DEFENDANT CITY OF CHICAGO.

6. DEFENDANT REGAN is Caucasian.

7. DEFENDANT CITY OF CHICAGO is a duly incorporated municipal corporation and is the employer and principal of DEFENDANT REGAN. At all times material to this Complaint, DEFENDANT REGAN was acting under color of state law, ordinance and/or regulation, statutes, custom and usage of DEFENDANT CITY OF CHICAGO.

### III. FACTS

8. In July 2018, PLAINTIFF was enrolled in a paramedic training program at Malcolm X College.

9. As part of the paramedic training program, PLAINTIFF was assigned to participate in "ride-alongs" with the Chicago Fire Department.

10. These "ride-alongs" consisted, in part, of PLAINTIFF spending the night at a Chicago Fire Department firehouse.

11. PLAINTIFF participated in "ride-alongs" with the Chicago Fire Department for the purpose of learning how to be a paramedic.

12. PLAINTIFF was an intern of the Chicago Fire Department.

13. On July 20, 2018, PLAINTIFF was assigned to perform a "ride-along" at Chicago Fire Department Engine 126/Truck 49, located at 7313 South Kingston Avenue, Chicago, Illinois 60649.

14. On July 20, 2018, at approximately 6:30 p.m., PLAINTIFF was present at Chicago Fire Department Engine 126/Truck 49.

15. On July 20, 2018, at approximately 6:30 p.m., DEFENDANT REGAN was present at Chicago Fire Department 126/Truck 49.

16. On July 20, 2018, at approximately 6:30 p.m., PLAINTIFF and DEFENDANT REGAN were sitting next to each other at the dinner table at Chicago Fire Department 126/Truck 49.

17. DEFENDANT REGAN asked PLAINTIFF if PLAINTIFF wanted to get in the shower with DEFENDANT REGAN.

18. DEFENDANT REGAN told PLAINTIFF there was a pool in the basement of Chicago Fire Department 126/Truck 49.

19. DEFENDANT REGAN said to PLAINTIFF, "I can teach you how to swim naked."

20. DEFENDANT REGAN said to PLAINTIFF, "I can teach you how to play Marco Polo naked."

21. DEFENDANT REGAN put his hand on PLAINTIFF'S left leg.

22. DEFENDANT REGAN put his hand on PLAINTIFF'S genitals.

23. DEFENDANT REGAN grabbed PLAINTIFF'S genitals.

24. PLAINTIFF did not consent to being touched by DEFENDANT REGAN.

25. When DEFENDANT REGAN grabbed PLAINTIFF'S genitals, PLAINTIFF'S movement was restricted.

26. When DEFENDANT REGAN grabbed PLAINTIFF'S genitals, PLAINTIFF was not free to leave.

27. After DEFENDANT REGAN grabbed PLAINTIFF'S genitals, PLAINTIFF informed other Chicago Fire Department personnel at Chicago Fire Department Engine 126/Truck 49.

28. In response, at least four Chicago Fire Department Battalion Chiefs arrived at Chicago Fire Department Engine 126/Truck 49.

29. PLAINTIFF told the Chicago Fire Department Battalion Chiefs and other personnel that he wanted to report the conduct of DEFENDANT REGAN.

30. Multiple Chicago Fire Department Battalion Chiefs and other personnel tried to threaten and coerce PLAINTIFF into not reporting the conduct of DEFENDANT REGAN.

31. Chicago Fire Department Battalion Chiefs and other personnel told PLAINTIFF, "It was just firehouse horseplay."

32. Chicago Fire Department Battalion Chief Dan Mullaney told PLAINTIFF, "He [DEFENDANT REGAN] was just playing around."

33. Chicago Fire Department Battalion Chiefs and other personnel told PLAINTIFF that DEFENDANT REGAN wanted to apologize.

34. PLAINTIFF told the Chicago Fire Department Battalion Chiefs and other personnel that he wanted to call the police.

35. Multiple Chicago Fire Department Battalion Chiefs and other personnel tried to threaten and coerce PLAINTIFF into not calling the police.

36. PLAINTIFF called the police and the police arrived.

37. After the police arrived, multiple Chicago Fire Department Battalion Chiefs and other personnel tried to discredit PLAINTIFF.

38. A Chicago Fire Department Captain, referring to PLAINTIFF, told police, "This motherfucker doesn't know what he's talking about."

39. Multiple Chicago Fire Department Battalion Chiefs and other personnel lied to the police.

40. Multiple Chicago Fire Department Battalion Chiefs and other personnel actively impeded a police investigation.

41. Multiple Chicago Fire Department Battalion Chiefs and other personnel actively tried to cover up for the actions of DEFENDANT REGAN.

42. Multiple Chicago Fire Department Battalion Chiefs and other personnel told police that they did not know who allegedly touched PLAINTIFF. This was false, as the Battalion Chiefs and other personnel knew that DEFENDANT REGAN had touched PLAINTIFF.

43. On July 20, 2018, while PLAINTIFF was present at Chicago Fire Department Engine 126/Truck 49, PLAINTIFF was being taught by DEFENDANT REGAN.

44. On July 20, 2018, while PLAINTIFF was present at Chicago Fire Department Engine 126/Truck 49, PLAINTIFF was subordinate to DEFENDANT REGAN.

45. On July 20, 2018, while PLAINTIFF was present at Chicago Fire Department Engine 126/Truck 49, PLAINTIFF was in a subordinate position to DEFENDANT REGAN.

46. On July 20, 2018, while PLAINTIFF was present at Chicago Fire Department Engine 126/Truck 49, PLAINTIFF had to follow instructions given to him by DEFENDANT REGAN.

47. Alternatively, DEFENDANT REGAN'S touching of PLAINTIFF was not a personal matter.

48. Alternatively, DEFENDANT REGAN'S touching of PLAINTIFF was not motivated by personal animosity on the part of DEFENDANT REGAN.

49. Alternatively, DEFENDANT REGAN'S touching of PLAINTIFF was not for DEFENDANT REGAN'S sexual gratification.

50. Alternatively, DEFENDANT REGAN grabbed PLAINTIFF'S genitals for, *inter alia*, the following reasons: to assert DEFENDANT REGAN'S authority, to enforce the Chicago Fire Department chain-of-command, to initiate PLAINTIFF into Chicago Fire Department firehouse culture, to test PLAINTIFF'S willingness to be part of the firehouse group dynamic, and to test PLAINTIFF'S willingness to be a team player.

51. Alternatively, there exists a culture of hazing and horseplay within the Chicago Fire Department.

52. Alternatively, the culture of hazing and horseplay within the Chicago Fire Department is implicitly approved of, promoted, and encouraged by policymakers, supervisors, and management within the Chicago Fire Department.

53. Alternatively, by making sexual comments to PLAINTIFF and grabbing PLAINTIFF'S genitals, DEFENDANT REGAN was acting in conformity with and/or reinforcing the hazing and horseplay culture within the Chicago Fire Department.

54. Alternatively, DEFENDANT REGAN'S behavior in making sexual comments to PLAINTIFF and grabbing PLAINTIFF'S genitals was implicitly and explicitly approved of, promoted, and encouraged by policymakers, supervisors, and management within the Chicago Fire Department.

## COUNT I
### Fourth Amendment Unlawful Seizure Pursuant to 42 U.S.C. § 1983
**(DEFENDANT REGAN)**

55. PLAINTIFF realleges paragraphs 1-54 set forth above.

56. DEFENDANT REGAN violated PLAINTIFF'S clearly established constitutional right to be free from unlawful searches and seizures.

57. The conduct of DEFENDANT REGAN alleged above violated the Fourth Amendment to the United States Constitution.

58. The aforementioned actions of DEFENDANT REGAN were the direct and proximate cause of the constitutional violations set forth above, and PLAINTIFF suffered damages.

WHEREFORE, PLAINTIFF respectfully requests that this Honorable Court enter judgment in favor of PLAINTIFF and against DEFENDANT REGAN, and award compensatory damages, punitive damages, court costs, attorneys' fees, and such other relief that this Honorable Court deems just and equitable.

## COUNT II
### Indemnification Claim Pursuant to 745 ILCS 10/9-102
**(DEFENDANT CITY OF CHICAGO)**

59. PLAINTIFF realleges paragraphs 1-58 set forth above.

60. DEFENDANT CITY OF CHICAGO is the employer of DEFENDANT REGAN.

61. DEFENDANT REGAN, as alleged above, committed the acts under color of law in the scope of his employment by DEFENDANT CITY OF CHICAGO.

62. Pursuant to the Illinois Tort Immunity Act, 745 ILCS 10/9-102, DEFENDANT CITY OF CHICAGO is liable for any judgments for compensatory damages arising from DEFENDANT REGAN'S actions.

WHEREFORE, should DEFENDANT REGAN, in his individual capacity, be found liable for any of the alleged counts in this cause, PLAINTIFF demands that, pursuant to 745 ILCS 10/9-102, DEFENDANT CITY OF CHICAGO pay any judgment obtained against DEFENDANT REGAN.

### COUNT III
### *Monell* Claim
### (DEFENDANT CITY OF CHICAGO)

63. PLAINTIFF realleges paragraphs 1-58 set forth above.

64. It is the custom, practice, and/or policy of Chicago Fire Department personnel and/or their supervisors/agents and/or other employees of the Chicago Fire Department to perform the following acts and/or omissions:

   a. generate false documentation to cover-up for the misconduct of fellow fire department personnel;

   b. fabricate documents concerning acts of misconduct that have occurred by fellow firefighters;

   c. engage in acts of sexual misconduct;

   d. engage in the excessive use of force;

   e. fail to properly discipline personnel from said fire department who have committed acts of sexual misconduct and/or excessive use of force;

   f. fail to properly investigate complaints;

   g. fail to take proper remedial action against personnel from said fire department who have committed acts of sexual misconduct and/or excessive use of force;

   h. allow misconduct to occur in various types and severity such that all fire department personnel believe that they can engage in sexual misconduct and/or excessive force without repercussions and/or significant repercussions;

   i. fail to provide adequate sanctions/discipline to fire department personnel who commit acts of sexual misconduct and/or excessive force; and

65. This practice and/or custom, as alleged above, has gone unchecked and has been allowed to exist in the Chicago Fire Department for a significant period of time, so much so that fire department personnel recognize that they will not be punished for committing said acts. In fact, said acts are either permitted or quietly consented to by superiors of the Chicago Fire Department in order to permit said conduct to reoccur.

66. A code of silence exists among Chicago Fire Department personnel. This code of silence obstructs the legal process (preventing the free flow of honest information with regard to acts of misconduct). This code of silence contributes to the generation of secrets regarding misconduct within the Chicago Fire Department.

67. Since 2008, the Chicago Fire Department has paid out nearly $92 million in workplace discrimination lawsuits.

68. On November 1, 2011, then-Captain Mark Altman of the Chicago Fire Department swore at and then violently threw to the ground twice Chicago Police Officer and marine diver Joseph Smith during a water rescue in the Chicago River.

69. A federal jury found Captain Altman liable for these acts on October 24, 2014.

70. A judgment of $1,331,779.15 was entered against Captain Altman.

71. That jury found that Captain Altman should pay to Mr. Smith $5,000.00 in punitive damages.

72. Captain Altman paid the punitive damages award.

73. Mr. Smith settled with the City of Chicago for $1,122,490.00 in compensatory damages.

74. Mr. Smith's attorneys were paid $479,334.03 in attorneys' fees by the City of Chicago.

75. Captain Altman was never demoted in connection with the injuries he inflicted onto Joseph Smith.

76. Captain Altman was never disciplined in connection with the injuries he inflicted onto Joseph Smith.

77. After Captain Altman paid the punitive damages award, he was then promoted within the Chicago Fire Department.

78. As a result of the injuries that Mr. Smith sustained from the use of excessive force by Captain Altman, Mr. Smith underwent two surgeries, one to his neck and one to his back.

79. Mr. Smith has returned to work on a permanent light-duty restriction due to the injuries that were inflicted upon him by Captain Altman.

80. Jennifer Manzella, a civilian, engaged in sexual acts for money with Chicago Fire Department firefighters at Engine 11, located at 5343 North Cumberland Avenue, Chicago, Illinois.

81. On January 20, 2018, approximately a dozen Chicago Fire Department firefighters were disciplined for allowing another firefighter to engage in sexual acts at a firehouse on the South Side of Chicago.

82. On April 6, 2018, a Chicago Fire Department paramedic was placed on leave because he repeatedly masturbated in full view of his coworkers at a firehouse on the South Side of Chicago.

83. Chief Raney of the Chicago Fire Department made sexual remarks to and requested sexual favors from a female Chicago Fire Department paramedic. Raney demanded a sexual relationship from the paramedic, referencing "blow jobs" in his communications with her.

84. Chicago Fire Department firefighter George Olifer sexually harassed a Chicago Fire Department paramedic and posted a picture of her in her bra and underwear on Facebook, without her consent.

85. Ambulance Commander George Bedon repeatedly made sexually suggestive statements to three separate paramedics of the Chicago Fire Department and physically touched and attempted to kiss them without consent.

86. Bedon made sexually suggestive statements to these Chicago Fire Department paramedics, including: "What color are your nipples?", "Do you wear a thong?", "What kind of underwear are you wearing?", "I can tell what kind of underwear you're wearing," that they "looked good," and that they had a "good body."

87. On November 3, 2017, Eric Heard, who served as a deliveryman for a local delivery service, delivered bunker gear to Captain John Jakubec of the Chicago Fire Department. At that time, Captain Jakubec grabbed Mr. Heard's buttocks, struck Mr. Heard on the head, grabbed Mr. Heard's delivery receipt, rubbed it on Captain Jakubec's genitals, and made sexual noises. Captain Jakubec's coworkers at the Chicago Fire Department lied to Internal Affairs investigators about the incident in an attempt to cover up Captain Jakubec's misconduct.

88. On March 28, 2018, Chicago Fire Department Firefighter John Copeland was punched in the face twice by his superior, Chicago Fire Department Lieutenant Leonard Johnson. As a result of the incident, Lieutenant Johnson was found guilty of criminal battery in violation of 720 ILCS 5.0/12-3(A)(1).

89. As a direct and proximate result of the aforementioned acts and omissions by DEFENDANT CITY OF CHICAGO, there exists a custom, practice, policy, and/or pattern, either implicit or explicit, by DEFENDANT CITY OF CHICAGO, in which Chicago Fire Department personnel cover up for the wrongful and/or illegal acts of their colleagues.

90. Said custom, practice, policy, and/or pattern by DEFENDANT CITY OF CHICAGO encourages, endorses, is willfully ignorant to, or otherwise promotes wrongful acts such as those committed by DEFENDANT REGAN.

91. As a direct and proximate result of the aforesaid custom, practice, policy, and/or pattern, either implicit or explicit, by DEFENDANT CITY OF CHICAGO, PLAINTIFF was injured in a personal and pecuniary manner.

WHEREFORE, PLAINTIFF respectfully requests that this Honorable Court enter judgment in favor of PLAINTIFF and against DEFENDANT CITY OF CHICAGO, and award compensatory damages, punitive damages, court costs, attorneys' fees, and such other relief that this Honorable Court deems just and equitable.

## JURY DEMAND

PLAINTIFF demands trial by jury.

Respectfully Submitted,

*s/Jeffrey C. Grossich*
Attorney for Plaintiff

Blake Horwitz, Esq.
Jeffrey C. Grossich, Esq.
The Blake Horwitz Law Firm, Ltd.
111 West Washington Street, Suite 1611
Chicago, Illinois 60602
Phone: (312) 676-2100
Fax: (312) 445-8741