UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PATRICK BLAKE,<br><br>   Plaintiff,<br><br>  v.<br><br>WILLIAM REGAN and THE CITY OF CHICAGO,<br><br>   Defendants. | No. 20 CV 4065<br><br>Judge Manish S. Shah |

MEMORANDUM OPINION AND ORDER

After Chicago firefighter William Regan was found not guilty of battery in state court, former paramedic-trainee Patrick Blake filed this Section 1983 lawsuit against Regan, alleging that Regan seized Blake in violation of the Fourth Amendment when Regan grabbed Blake's genitals. Blake also filed *Monell* and indemnification claims against Regan's employer, the City of Chicago. For the reasons stated below, the defendants' motions to dismiss are granted.

I.   **Legal Standard**

To survive a motion to dismiss for failure to state a claim, a complaint must contain a short and plain statement that plausibly suggests the violation of a legal right. Fed. R. Civ. P. 8(a)(2); Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–58 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). I accept the plaintiff's factual allegations as true and draw all reasonable inferences in his favor. *Iqbal* at 678–79.

II.     **Facts**

Patrick Blake attended college to be a paramedic. [5] ¶¶ 3–4, 8.[1] As part of his training, he interned at the Chicago Fire Department. [5] ¶¶ 7, 9–12. Firefighter William Regan was Blake's instructor and superior. [5] ¶¶ 43–46. One evening, while at the dinner table at the station, Regan asked Blake if Blake wanted to get in the shower together. [5] ¶¶ 13–17. Regan said that there was a pool in the basement, and that he could teach Blake how to swim and play the game Marco Polo naked. [5] ¶¶ 18–20. Regan put his hand on Blake's left leg and grabbed Blake's genitals. [5] ¶¶ 21–23.

Blake did not consent to the touching. [5] ¶ 24. Regan's touching was not a personal matter, was not motivated by personal animosity, and was not for sexual gratification. [5] ¶¶ 47–49. Rather, an accepted culture of "hazing and horseplay" existed within the Chicago Fire Department, and Regan's actions were meant to assert his authority, enforce the department's chain-of-command, initiate Blake into the fire department's culture, and test Blake's willingness to be a part of the team. [5] ¶¶ 50–54. As an example of this culture, Blake cited a separate lawsuit, where five paramedics established enough facts of sexual harassment and battery within the Chicago Fire Department to proceed to trial. [5] ¶¶ 83–86; *see Doe 1 et al. v. City of Chicago*, No. 18-cv-03054 (N.D. Ill.). ECF No. 404.[2] Blake also alleges that another

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are from the CM/ECF header placed at the top of filings.

[2] Courts may take judicial notice of public records, like public court documents. *See* Fed. R. Evid. 201; *White v. Keely*, 814 F.3d 883, 885, n.2 (7th Cir. 2016).

fire captain sexually battered a deliveryman, and that the captain's coworkers lied to investigators to cover up the misconduct. [5] ¶ 87.[3]

Blake informed fire department personnel of Regan's conduct and told at least four battalion chiefs that he wanted to report it. [5] ¶¶ 27–29. The chiefs and other fire department personnel tried to stop Blake. [5] ¶ 30. They said it was "just firehouse horseplay" and that Regan wanted to apologize. [5] ¶¶ 31, 33. One chief said Regan "was just playing around." [5] ¶ 32. They also tried, but failed, to stop Blake from calling the police. [5] ¶¶ 34–35. When the police arrived, the battalion chiefs and other fire department personnel discredited Blake's story and lied to the police about what happened, claiming that they didn't know who allegedly touched Blake. [5] ¶¶ 37–42.

The State of Illinois charged Regan with battery. [21-2].[4] During the trial, Blake testified that Regan made inappropriate comments towards him at dinner, that

---

[3] Blake alleges other examples of workplace culture, including that the Chicago Fire Department has paid nearly $92 million in workplace discrimination lawsuits since 2008, [5] ¶ 67; that in 2011 a fire captain battered a police officer and marine diver without any significant consequences to his position, [5] ¶¶ 68–79; that some firefighters paid money for sexual acts, [5] ¶ 80, while other firefighters, in a separate incident, were disciplined for turning a blind eye to similar sexual misconduct, [5] ¶ 81; that another fire department paramedic masturbated in public, [5] ¶ 82; and that a fire department lieutenant punched a firefighter in the face twice, [5] ¶ 88.

[4] I take judicial notice of the state court trial transcript for the battery claim against Regan. See Opoka v. I.N.S., 94 F.3d 392, 394 (7th Cir. 1996) (proceedings in other courts that have a direct relation to matters at issue may be subject to judicial notice). However, at this early stage in the case, I do not credit any of the testimony as true. See e.g. Johnson v. Advocate Health and Hospitals Corporation, 892 F.3d 887, 893 (7th Cir. 2018) (credibility determinations, weighing the evidence, or deciding which inferences to draw, are jobs for a factfinder). A plaintiff's allegations in the complaint provide the basis to decide whether he has a plausible claim for relief, although a plaintiff may refer to additional facts that are consistent with the complaint to illustrate what the plaintiff expects to prove. See Geinosky v. City of Chicago, 675 F.3d 743, 745 n.1 (7th Cir. 2012).

Regan touched him in a sexual manner, and that Blake tried to and eventually moved his leg away from Regan. [21-2] at 10–12. Blake felt "shocked" and "basically frozen" in response to Regan's actions. [21-2] at 12–13. Regan was terminated from his position but found not guilty at trial. [21-2] at 20, 89.

### III. Analysis

Under Section 1983 of the Civil Rights Act, an injured party can sue a "person" who, acting under color of state law, deprives him of his rights under the U.S. Constitution. 42 U.S.C. § 1983; *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 688–89 (1978) (the word "person" extends to municipal corporations). Blake alleges that Regan's conduct deprived him of his rights under the Fourth Amendment, which protects people against "unreasonable searches or seizures" by the government. U.S. Const., amend. IV.[5] A person is "seized" by the government if, "in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). A seizure involving physical force occurs when the government official restrains a person's freedom to walk away. *Terry v. Ohio*, 392 U.S. 1, 16 (1968). A seizure without physical contact occurs when a person submits to a government official's show of authority and reasonably believes he is not free to leave. *California v. Hodari D.*, 499 U.S. 621, 626 (1991). The inquiry is fact-specific. Circumstances indicative of seizure include the threatening presence of several officials, the display

---

[5] The Fourth Amendment applies to state and local governments through the due process clause of the Fourteenth Amendment. *See e.g. Petkus v. Richland County, Wis.*, 767 F.3d 647, 650 (7th Cir. 2014).

of weapons, physical touching, or the use of forceful language or tone of voice. *Mendenhall*, 446 U.S. at 554.

Regan made inappropriate sexual comments to Blake about showering and swimming, and then touched Blake's leg and grabbed Blake's genitals without his consent. [5] ¶¶ 13–23. These allegations amount to battery under Illinois state law. *See* 720 ILCS § 5/12-3. However, they do not amount to a seizure under the Fourth Amendment. Regardless of whether or not Regan was Blake's teacher, Regan did not physically restrain Blake from leaving, and Blake did not submit to Regan's authority. Blake left the table, reported the incident, and called the police. [5] ¶¶ 27–29, 34–36. While Blake testified that he felt frozen and shocked, [21-2] at 12–13, and may have been in a weaker position of power as a student surrounded by other firefighters, Regan did not keep Blake under his control. *Compare McCoy v. Harrison*, 341 F.3d 600, 603, 606 (7th Cir. 2003) (no seizure where the defendant, a state animal welfare investigator, knocked the plaintiff to the ground and dug his fingernails into her arm because the defendant walked away and the plaintiff got up and went home), *with Acevedo v. Canterbury*, 457 F.3d 721, 725 (7th Cir. 2006) (seizure found where the plaintiff was knocked to the ground in a location under general police control and unable to move for a period of time). Regan did not direct Blake's movement after grabbing him. *Cf. Driebel v. City of Milwaukee*, 298 F.3d 622, 649 (7th Cir. 2002) (seizure found where detective grabbed plaintiff, turned him around, and directed him towards the squad car). Blake's subjective fears about academic or professional consequences do not establish that Regan actually restrained Blake's freedom of

5

movement. *See id.* at 642 (the Fourth Amendment does not protect against the threat of job loss; the inquiry is whether a reasonable person would have feared seizure or detention if he had refused to obey the commands of a superior). And Regan's intent is irrelevant to the objective question of whether he seized Blake. *See Brendlin v. California*, 551 U.S. 249, 260–61 (2007). True, Blake froze when Regan grabbed him, but the encounter must be assessed in its entirety. *See Acevedo*, 457 F.3d at 725. Blake's complaint pleads that he extricated himself from Regan without limitation on his movement. He was not seized for purposes of the Fourth Amendment.

Blake also fails to allege that Regan acted under "color of state law." A government official's conduct occurs under color of state law when it relates in some way to the performance of that official's duties. *Wilson v. Price*, 624 F.3d 389, 392 (7th Cir. 2010). This includes "a misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id.* (citation and quotation omitted). What matters is the specific acts the government official performed, not just that he was on duty. *Pickrel v. City of Springfield, Illinois*, 45 F.3d 1115, 1118 (7th Cir.1995). In Regan's case, sexual harassment and battery are not related to a firefighter's duties. *See e.g. Honaker v. Smith*, 256 F.3d 477, 485–86 (7th Cir. 2001) (holding that was arson not among a fire chief's duties). Blake suggests that Regan's conduct was his way of training an intern—to enforce the chain of command and indoctrinate Blake into a culture of "hazing and horseplay." [5] ¶¶ 50–51. But there is no source in state law for this culture or conduct. *Cf. Wudtke v. Davel*, 128 F.3d 1057, 1059, 1064 (7th Cir. 1997) (misuse of power occurred when

the school superintendent threatened to terminate the plaintiff and deny her a special education license if she refused to engage in sexual acts). Here, Regan did not invoke any state-granted powers given to firefighters who trained paramedics. Although it was in reference to the department's command structure, Regan's method of training was not based on state law or public authority, but on an internal, private culture. Any "acts of officers in the ambit of their personal pursuits are plainly excluded" from § 1983. *Screws v. United States*, 325 U.S. 91, 111 (1945).[6]

Since Blake fails to allege a deprivation of constitutional rights under color of state law, his § 1983 claims against Regan and the City of Chicago fail. Ordinarily, a plaintiff should be given a chance to amend the complaint after a first dismissal. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago and Northwest Indiana*, 786 F.3d 510, 519 (7th Cir. 2015). But this is the rare case where futility is apparent from the complaint. *See id.* at 520. The allegations of the complaint make it certain that Blake was free to leave and Regan acted out of private authority. Blake's § 1983 claims against Regan and the City are dismissed with prejudice.[7] Blake's state-law indemnification claim is based on the same conduct as his constitutional claim. A tort judgment is a prerequisite to any claim of payment under the Illinois Tort Immunity

---

[6] Blake concedes that the City did not have a duty to protect him from private conduct. [24] at 12–13; *see also DeShaney v. Winnebago Cty. Dep't of Soc. Serv.*, 489 U.S. 189 (1989) (describing the two exceptions to the rule that the State does not have an affirmative duty to protect individuals from harm by private actors).

[7] The parties briefed, but I do not reach the question of whether Blake's allegations are enough to state a widespread practice for municipal liability under *Monell*. Without an underlying constitutional violation, there can be no municipal liability. *Jenkins v. Bartlett*, 487 F.3d 482, 492 (7th Cir. 2007).

Act, and Blake cannot obtain one if he fails to allege a constitutional tort. *See* 745 ILCS § 10/9-102.[8]

### IV. Conclusion

The defendants' motions to dismiss, [21] and [22], are granted. Blake's amended complaint, [5], is dismissed with prejudice. Enter judgment and terminate civil case.

ENTER:

                                            Manish S. Shah
                                            United States District Judge

Date: February 23, 2021

---

[8] Because Blake does not allege a constitutional tort, I do not reach the parties' arguments about whether Regan was acting within the scope of his employment for purposes of the Illinois Tort Immunity Act. *See* 745 ILCS § 10/9-102.

8